**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **SHERRY LEE CRUZ,** | ) | **CASE NO. 7:18-cv-00438** |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **ALDRIDGE,**[1] | ) | **By: Norman K. Moon** |
| **Respondent.** | ) | **Senior United States District Judge** |

Petitioner Sherry Lee Cruz, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of her confinement resulting from a judgment of the City of Winchester Circuit Court. In that judgment, she was convicted after a jury trial on six charges: first-degree murder in the commission of arson, arson, and four counts of felony child abuse. The charges all arose from the same incident—a fire in her apartment—which resulted in the death of one of her five children.

In her petition, Cruz asserts seven claims, several of them containing multiple sub-parts. Respondent filed a motion to dismiss Cruz's § 2254 petition, and Cruz has responded, making the matter ripe for disposition.

Some, but not all, of Cruz's claims in her petition before this court were raised and addressed in her state habeas proceeding. Other of her claims were raised on habeas but not on direct appeal. Thus, many of her claims are procedurally defaulted and I conclude that Cruz has not shown cause and prejudice or set forth a sufficient claim of actual innocence to excuse that default. As to the non-defaulted claims, I conclude that the state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, and I further conclude that the decision was not based on an unreasonable determination of the facts.

---

[1] Eric Aldridge (mistakenly spelled "Aldrige" in the petition) is the warden at the correctional center where Cruz currently is in custody, and the proper respondent.

For these reasons, I will grant the motion to dismiss. I further conclude that Cruz is not entitled to a certificate of appealability.

## I.    BACKGROUND

On direct appeal, the Court of Appeals of Virginia set forth the facts as presented at trial as follows:

> [O]n June 18, 2013, [Cruz] was in her residence located on the corner of Kent Street and Fairfax Lane with her five children. The children were all under the age of four. [Cruz's] boyfriend also lived in the apartment, and he left for work at approximately 5:00 a.m. The residence, as part of an apartment complex, consisted of a living room, a kitchen, a bedroom, and a bathroom. There was a non-functioning fireplace in the living room. At 7:49 a.m., [Cruz] was seen in a surveillance video walking on Kent Street in the direction of Bo's Belly Barn, a convenience store. A short time later, [Cruz] purchased a gasoline can and three dollars of gasoline. A surveillance video showed [Cruz] returning home at 7:56 a.m.
>
> A few hours later, [Cruz] emerged onto her front porch with an infant daughter, as smoke began to billow from the residence. Annette Bell, who lived nearby, was seated on her front porch. When Bell saw [Cruz] step out of the residence, Bell grabbed the infant from [Cruz]. [Cruz] screamed that her babies were inside and reentered the residence. [Cruz] exited a side door facing Fairfax Lane with two additional children. The side exit door connected to the bedroom. [Cruz] reentered through the side door and returned with another child. [Cruz] told bystanders that she had four children, but then remembered she had a fifth child and returned to the residence.
>
> Deputy Steve Moore arrived, entered the residence by the side door, and noticed burn marks on [Cruz's] arm. At the time, the fire had not spread to the bedroom, and Moore escorted [Cruz] out of the residence. Firefighter Branyon Williams entered and crawled along the kitchen floor until he found C. C., a two-year-old child, who was trapped underneath a melted refrigerator door. C. C. died from thermal and inhalation injuries.
>
> Assistant Fire Marshal Matthew Gearhart, an expert in fire investigations, examined fire patterns and determined that the fire originated in the living room. The low burn patterns indicated the fire could have started in front of the fireplace. While Gearhart and

Fire Marshal Jeremy Luttrell, an expert in the cause and origin of fires, were removing debris, Luttrell located a strong odor of gasoline emanating from a pile of clothing that was in front of the fireplace. The fire marshals sent samples of the flooring from the rooms of the residence, the clothing, and a water bottle found in front of the fireplace for analysis. The flooring in front of the fireplace, the clothing, and the water bottle were positive for gasoline. Gearhart testified the fire originated in front of the fireplace. Gearhart also investigated possible causes of the fire and determined the fire was not caused by a defect in light switches, electrical outlets, receptacles, appliances, fixtures, the nonfunctional fireplace, a natural gas leak, or an act of God. Remnants of cigarettes were found underneath a couch across from the fireplace but Gearhart testified it had been scientifically shown that cigarettes did not burn hot enough to ignite gasoline. Gearhart determined that the fire consisted of an open flame being introduced to gasoline.

On June 20, 2013, Gearhart interviewed [Cruz]. [Cruz] stated that she never left her residence on the day of the fire and went to take a shower after putting the children down for a nap. While in the bathroom, she smelled smoke, she opened the door to the kitchen, saw a ball of fire, picked up the baby, ran outside, and returned to get the other children. [Cruz] stated that she may have attempted to throw clothes and water on the fire. On June 21, 2013, [Cruz] spoke to Detective Frank Myrtle. [Cruz] stated that she was in the bathroom for an extended period of time because she had diarrhea and saw a ball of fire when she exited the bathroom. [Cruz] stated that she threw clothes and water on the fire prior to grabbing the baby. [Cruz] called Myrtle three times inquiring about the laboratory results, but she failed to appear for three scheduled interviews with Myrtle. After the laboratory results were reported, [Cruz] again spoke to Myrtle. [Cruz] stated that on June 18, 2013 she purchased the gasoline to put into a car, that the car was located in Middleburg, and that she had called her sister to drive her to the car. According to [Cruz], she was unable to get in contact with her sister. [Cruz] also stated that a man knocked on the door of her apartment on the morning of the fire, she spoke to the man, and that the man walked across the street to speak to her landlord, Chriss [Poulos]. [Cruz] claimed that she had an argument with [Poulos] concerning a gasoline can he removed from the front porch. In a written statement on July 24, 2013, [Cruz] stated that she was smoking in the bathroom and the children banged on the door when the fire started.

[Poulos] and [Poulos's] wife testified [Poulos] was home and not on Kent Street at the time of the fire. Ten days prior to the fire, [Cruz] called 911 twice and Bryan McFarland, an employee of Shenandoah

3

Gas, responded. McFarland testified he could smell an odor of gasoline in an apartment adjoining [Cruz's] residence, but there was no odor of natural gas and there was no natural gas leak in the building. McFarland noticed a gasoline can on the front porch, informed [Poulos], and [Poulos] testified that he removed the gasoline can on June 8, 2013.

David Baker testified that he went to the apartment building in June 2013 because he was going to move there the following month. Baker testified that he spoke to [Cruz], but it was not on the day of the fire and was approximately one week prior to the fire. Baker testified that while speaking with [Cruz], [Poulos] arrived, and [Poulos] showed him apartments in the building. Baker testified [Poulos] and [Cruz] argued about a gasoline can.

Angela Bailey lived across the street from [Cruz], and she testified that she was on her front porch for approximately forty-five minutes prior to the fire. Bailey testified that she did not see anyone at [Cruz's] residence during that time. Susan Mason testified that she lived near [Cruz], she knew [Poulos], and was outside at various times on the morning of the fire but did not see [Poulos] in the area. Carol Johnson, [Cruz's] mother, testified that she watched the five children the weekend prior to the fire because [Cruz] was tired and needed a break. Johnson testified that [Cruz's] relationship with her boyfriend was volatile. Johnson testified that [Cruz] blamed the fire on [Poulos].

*Cruz v. Warden,* Civil No. CL16000111-00 (Winchester City Cir. Ct. June 12, 2017), attached as

Resp.'s Ex. 9 at 3–6 (quoting facts as found by Virginia Court of Appeals on direct appeal).[2]

Cruz did not testify.

Based on counsel's closing argument (*see generally* Trial Tr. 810–51, 865–68), the

Commonwealth's theory of the case was that Cruz was "desperate" to get out of her current

living situation. Counsel pointed out that she was living in a 600-quare-foot apartment with her

fiancé, a newborn, and four other young children, who she described as "tearing up" the house.

---

[2] Respondent has attached many state court documents as exhibits to its motion to dismiss. (*See* Dkt. Nos. 14-1 to 14-12.) I cite to those where possible. Paper copies of the records from the Circuit Court of the City of Winchester (including the habeas records) are on file with the Clerk and referred to herein as "Trial Rec." for documents and "Trial Tr." for transcripts. (*See* Dkt. No. 18.) The page numbers refer to the handwritten numbers at the bottom of those records and transcripts, if available.

She had a "volatile" and abusive relationship with her fiancé. He emphasized that she was tired and had asked her mother to take the kids the weekend before so that she could have a break. He also stated that she "hated" her landlord, was frustrated at things not working in the apartment and him not fixing them, and angry at him for stealing a gas can she had had on her porch a week before the fire.

Counsel emphasized various inconsistencies in the accounts of the fire that Cruz gave to investigators at different times in the investigation, beginning two days after the fire and proceeding over about the next month. He suggested that her story changed both because portions of it were false and because she was trying to adapt to fit information that was being reported by the media about details of the investigation. As to the other persons Cruz thought may have started the fire (or that she told others she blamed), the Commonwealth pointed to evidence suggesting that none of those persons could have snuck in and started the fire that day. Counsel also noted that she received burns on her arm only on one side of her body, which he argued were consistent with burns received in close proximity to the gasoline being lit, and inconsistent with burns received as she tried to rescue the children, given the layout of the house.

As to the child abuse and neglect charges, the prosecutor suggested that the jury could find her guilty of that based on "whatever reasons" were supported by the evidence. He noted as examples her gross and wanton negligence of having gasoline around the house while smoking cigarettes, as well as locking the children in their bedroom.

Defense counsel's closing, (*see generally* Trial. Rec. at 852–65), was devoted largely to arguing that the Commonwealth's story—and its suggestions as to Cruz's motives for setting the fire—simply did not make sense. Counsel noted that it would not be unusual for a mother of five young children (including a newborn) to want a break for a weekend from her children. He

emphasized that she was on a month-to-month lease and could have left that home at any time she desired, so there was no need for arson to escape her living situation. He argued that it made no sense that she would buy gasoline, come home and change into her nightgown, take out her dentures, wait several hours, and then light a fire in her living room simply to spite her landlord or get out of a "bad" situation. She left all her possessions in the home, all of which were lost to the damage, and she returned to the house repeatedly, risking the fire and smoke in order to attempt to rescue her children. He argued that these were not the actions of a person who had planned to, and intentionally did, set her home on fire. He also offered an alternative theory for how the fire stated: perhaps Cruz had been smoking in the chair by the fireplace (as she did), that a cigarette or ashes from one came into contact with the carpet, which then became an open flame while she was in the bathroom, and that flame ignited the gasoline.

With regard to her allegedly inconsistent stories, counsel contended that it was not surprising that she did not remember all the details or correctly convey what happened when she first spoke to investigators, because she had just gotten out of the hospital, was on Percocet at the time, and had just learned that Christian had died in the fire. He further noted that she had volunteered much of the information the Commonwealth was using against her at trial, including that she had gone to Bo's that day to buy gasoline.

## II. PROCEDURAL HISTORY

As noted, the jury convicted Cruz of first-degree murder in the commission of arson, arson, and four counts of felony child abuse. (Trial Order and Corrected Trial Order in Case Nos. CR13001070-00, CR13001071-00, CR 13001189-00, CR 13001190-00, CR 13001191-00, CR13001192-00, Resp't Ex. 1.) The jury also convicted Cruz of one count of felony homicide (or second-degree murder) for Christian's death, but at sentencing, the Commonwealth elected to

proceed only on the first-degree murder conviction, and the trial court dismissed the lesser charge. Cruz was sentenced to a total sentence of 36 years' incarceration, with three of those years suspended and a fourth year served concurrently with Cruz's other sentences. (Resp't Ex. 2.) The court also found that Cruz had violated the terms of her probation from a prior case, revoked her probation, and sentenced her to 4 years, 11 months, and 29 days for the violation. That sentence was ordered to be served concurrently with her sentences in this case and with sentences imposed upon a separate revocation in Prince William County on June 5, 2014.

Cruz appealed, but the Virginia Court of Appeals denied her petition for appeal in a per curiam order entered August 13, 2015, and by a three-judge order entered October 20, 2015. (Resp't Ex. 4 (Cruz v. Commonwealth, Record No. 1416-14-4).) The Supreme Court of Virginia refused her petition for appeal by order entered July 19, 2016. (Resp't Ex. 6.) Cruz was represented throughout her direct appeal by her trial attorneys.

In March 2016, Cruz timely filed a habeas petition in the Winchester City Circuit Court. That petition raised four claims, many of them with subparts. (Resp't Ex. 7; *see also* Resp't Ex. 9 at 3 (state court habeas opinion setting forth Cruz's claims).) The first was a claim of ineffective assistance of counsel based on different failures of her trial counsel (claims 1(a) through 1(e)). Claim 2 was a claim of prosecutorial misconduct, based on several different actions by the prosecutors, including a failure to disclose exculpatory evidence, eliciting perjured witness testimony before the court, and making improper arguments during closing. In claim 3, she alleged that the trial judge abused its discretion by several rulings: (1) allowing a juror who had not disclosed her relationship with a law enforcement officer to be an alternate on the jury; (2) permitting the Commonwealth to amend some indictments, by changing the victim from initials (C.C.) to Christian Cruz, when Cruz had thought at least one of the indictments, in Cr.

No. 13-1191, referenced another son (Carlitos Cruz) with the same initials; and (3) a general claim that the trial judge repeatedly and unfairly "sided" with the Commonwealth. In claim 4, she alleged that newly discovered evidence proves that she is innocent of all charges.

After hearing oral arguments, the circuit court denied her petition. (Resp't Ex. 9.) The Supreme Court of Virginia refused her petition for appeal on August 8, 2018. (Resp't Ex. 10.)

### III. CLAIMS

In her current timely petition,[3] Cruz raises the following seven claims, with the subparts as identified by Respondent:[4]

> (1) Newly discovered evidence—including an interview with Cruz's son, Jaime Cruz, that was withheld by the Commonwealth, an interview with David Baker after trial, and Cruz's cell phone, which was withheld by the Commonwealth—demonstrates that Cruz's Fifth and Fourteenth Amendment rights to due process were violated and that the Commonwealth committed *Brady* violations;
>
> (2) The Commonwealth committed prosecutorial misconduct by (a) allowing perjured testimony of Panagiota Poulos, and false evidence presented by David Baker, Carol Johnson-Roles, Angela Bailey, Casey Sandoval, Glen Culp, Chriss Poulos, Frank Myrtle, Jeremy Luttrell, Matthew Gearheart, Kelli Murphy, and Amy Grimes; (b) withholding requested evidence from the defense in violation of *Brady*; (c) failing to preserve important evidence in the investigation in violation of the Fifth Amendment; (d) making numerous false statements during closing argument; (e) presenting false evidence to the trial judge at a bond hearing; and (f) changing the name of the victim in one of the indictments from Carlitos Cruz to Christian Cruz;
>
> (3) The trial court abused its discretion by (a) allowing the Commonwealth to amend indictment #13-CR-1191 by changing the alleged victim from Carlitos Cruz to Christian Cruz in violation of the Fifth Amendment and the Grand Jury Clause; (b) permitting a

---

[3] Cruz previously filed two § 2254 petitions with this court, but both were dismissed without prejudice because she had not yet exhausted her state court remedies. (Resp't Exs. 11, 12, Orders of Dismissal in Case Nos. 7:16cv318 and 7:16cv436.)

[4] The subparts were not labeled by Cruz, but were inserted by Respondent to distinguish between the various parts of her claims. I utilize the same numbering as Respondent.

juror to remain on the jury even after it was discovered that she had lied during the questions about being involved with a law enforcement officer; (c) making comments about Cruz during a bench conference; (d) allowing juror misconduct when it was clear from an investigation that a juror was lying and that something improper had occurred; (e) not allowing Cruz to obtain another attorney even though she requested one; (f) filing a paper saying Cruz had come before the court even though she had not; and (g) not taking corrective action when Cruz filed a showing that evidence was missing and perjury had occurred;

(4) Counsel were ineffective for (a) failing to interview any of the witnesses before trial; (b) failing to prepare and present a defense at all; (c) failing to impeach several of the Commonwealth's witnesses, including Carol Johnson Roles, Frank Myrtle, Matthew Gearheart, Kelli Murphy, Amy Grimes, David Baker, Susan Mason, Angela Bailey, Chriss Poulos, Panagiota Poulos, Jeremy Wade Luttrell, Betty Dehaven, Wanda Trenary, Casey Sandoval, and Glenn Culp; (d) failing to call Dale Wheeler, an expert witness, to testify for the defense about the cause of the fire; (e) hiring a private investigator who had only worked for the Commonwealth and had never worked for the defense; (f) failing to object to "them" not mentioning that Cruz's landlord had had another home burn down near Cruz's nine days after Cruz's burned down; (g) failing to move to suppress certain statements Cruz had made; (h) failing to object to prosecutorial misconduct, namely several statements made by the Commonwealth that clearly were false; (i) failing to object when it was made known that one of the jurors had lied during voir dire and had been involved with a law enforcement officer; (j) failing to investigate and elicit evidence to contradict the Commonwealth's witnesses' statements; (k) failing to present all the errors that had occurred at trial on direct appeal; (l) failing to call Benjamin Ramos-Domingo and Kristie and Andy Bishop to testify for the defense; (m) failing to object to a motion in limine asking counsel not to mention a different fire that had occurred near Cruz's apartment; (n) failing to object and show that Cruz's children were all present in a photograph that was presented showing Cruz walking to the store with the children; (o) failing to object to statements made by the trial court that constituted misconduct; and (p) telling Cruz not to testify because she would be emotional on the stand, "so it would not be a good idea";

(5) The trial court erred by failing to grant a change of venue, resulting in Cruz being denied the right to a fair and impartial trial and jury in violation of her Sixth Amendment rights;

(6) The trial court erred by allowing her to be convicted of first degree murder in the commission of an arson and second degree murder in violation of her Fifth Amendment rights against Double Jeopardy;[5] and

(7) The trial court erred by (a) refusing two proposed jury instructions relating to circumstantial evidence; and (b) giving Jury Instruction 9 stating that the unintentional killing during an arson or attempted arson is murder in the first degree.

## IV. DISCUSSION

### A. Exhaustion and Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted her state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999)). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002) (internal quotation marks and citation omitted). The petitioner bears the burden of proving exhaustion. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). But "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim . . . ." *Id.* (quoting *Gray*, 518 U.S. at 162).

---

[5] Claim 6 also reiterates claim 3(a) concerning the change to the indictment. (Pet. 73–74, Dkt. No. 3.)

As to claims 2(a), 2(d), 2(e), and 3(a), the Winchester City Circuit Court, in ruling on Cruz's habeas petition, found them procedurally defaulted because Cruz could have raised the issues at trial and on direct appeal, but failed to do so. (Resp't Ex. 9.) *See Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974) (holding that a claim could not be brought in a state habeas petition if it could have been brought on direct appeal). The *Slayton* bar "constitutes an adequate and independent state law ground for default"; thus, those claims are procedurally barred from consideration on federal habeas. *Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006). She cannot now return to state court to present those claims because her direct appeal is final and any additional state habeas proceeding would be both untimely and successive. *See* Va. Code § 8.01-654(B)(2) (requiring habeas petitioners to raise all available grounds for relief in their first state petition for a writ of habeas corpus), § 8.01-654(A)(2) (setting forth two-year state habeas statute of limitations). Accordingly, I conclude that these claims are now simultaneously exhausted and procedurally defaulted under *Baker* and, thus, they are barred from federal habeas review. *Teague v. Lane*, 489 U.S. 288, 297–99 (1989); *Basette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990).

Claim 3(b)—in which Cruz alleges that the judge abused his discretion in not striking a juror who failed to disclose her romantic relationship with a law enforcement offer—is in a slightly different position. Although respondent claims that Cruz failed to exhaust this claim either on direct appeal or in state habeas (Dkt. No. 14 at 17), that is not accurate.

Cruz failed to raise it on direct appeal, but she arguably raised it both in her state habeas petition (Resp't Ex. 7 at 108–10), and again in appealing that petition to the Supreme Court of Virginia (Resp't Ex. 10 at 7 (listing the trial court's abuse of discretion as a general assignment of error); *id.* at 14 (specifically discussing, under the "abuse of discretion" section, the juror-

related claim))).[6]  The habeas court, however, failed to identify it as a claim or to discuss it in its opinion.  Had the court done so, it likely would have concluded it was barred under *Slayton*, due to Cruz's failure to raise it on direct appeal.  Thus, like the claims discussed above, it would be simultaneously exhausted and procedurally defaulted.  Even if addressing it on its merits, moreover, I easily conclude that Cruz has not shown a violation of any federal right.  The particular juror was purposefully selected by the judge and parties as an alternate and no alternates were utilized.  (*See* Resp't Ex. 1 at 5–6.)  Because this juror did not participate in deliberations, then, this alleged error could not have had any effect on Cruz's rights.

As to claims 2(c), 2(f), 3(c), 3(d), 3(e), 3(f), 3(g), 4(e), 4(f), 4(h), 4(i), 4(k), 4(l), 4(m), 4(n), 4(o), and 4(p), Cruz failed to exhaust these claims either on direct appeal or in state habeas. Instead, she asserts them for the first time before this court.  Accordingly, they, too, are procedurally defaulted.

Three other claims—claims 5, 7(a) and 7(b)—were raised in Cruz's direct appeal before the Court of Appeals of Virginia, but she did not include them as assignments of error when she appealed to the Supreme Court of Virginia.  (*See* Resp't Ex. 5.)  She also did not assert them in her state habeas petition.  Thus, I find that she failed to exhaust them because she failed to advance them "at least once to the highest state court."  *Baker*, 220 F.3d at 288.

*B.  Excuse for Default–Cause and Prejudice or Miscarriage of Justice*

---

[6]  I say Cruz "arguably" raised this claim because it is questionable whether the claim was "fairly presented."  *See Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) ("The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.").  The habeas court reasonably may have concluded that it was not a separate claim but merely supporting detail for some other argument, given the format of Cruz's state habeas petition. Her state petition was more than 120 pages long, not including the exhibits.  Although the general claims were listed on one page, the "details" supporting each one consisted mostly of block quotes concerning general legal principles interspersed with transcript excerpts and often contained little explanation as to the connection between the two.  (*See generally* Resp't Ex. 7.)

A state prisoner can obtain federal habeas review of a procedurally defaulted claim if she shows either (1) cause and prejudice or (2) a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause, a petitioner must identify "some objective factor external to the defense" that impeded her from raising her claim at an earlier stage. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must also show that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999) (citing *McClesky v. Zant*, 499 U.S. 467, 494 (1991)). To establish prejudice, a petitioner must establish that the alleged constitutional violation worked to her "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). "[T]he 'cause and prejudice' test is framed in the conjunctive, the absence of cause makes unnecessary an inquiry into prejudice." *Davis v. Allsbrooks*, 778 F.2d 168, 176 (4th Cir. 1985).

The "miscarriage of justice" exception is a narrow one, requiring a habeas petitioner to demonstrate that a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Murray*, 477 U.S. at 496. That is, the fundamental miscarriage of justice exception to claims that are otherwise procedurally defaulted requires a petitioner to proffer a colorable claim of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 324–25 (1995).

### 1. Miscarriage of Justice

Taking those two exceptions in reverse order, I first conclude that Cruz has not advanced facts sufficient to fall within the miscarriage of justice exception. To succeed on a gateway actual innocence claim, a petitioner must produce new, reliable evidence sufficient to persuade the court that no reasonable juror would have found the petitioner guilty beyond a reasonable

doubt. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citing *Schlup*, 513 U.S. at 329).

"Habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Schlup*, 513 U.S. at 321. A showing of actual innocence to allow one to pass through the *Schlup* gateway and avoid the procedural default bar to review, must be a showing of "factual innocence," not legal innocence or evidentiary insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1013 (11th Cir. 2012). Cruz does not present any new reliable evidence to satisfy that standard.

The new evidence that Cruz points to in support of her innocence, might weaken very slightly the case against her—a case characterized by the state habeas court as a "strong" one. (Resp't Ex. 9 at 9.) But considering all of the evidence presented, including the allegedly "new" evidence, I cannot find that "no reasonable juror would have found her guilty beyond a reasonable doubt," so as to satisfy *Schlup*. In addition to other evidence she points to that was available at the time of trial (mostly discrepancies in witness testimony), the new evidence consists of an interview with her three-year old son, Jaime, that was not disclosed until after trial; notes by her investigator concerning his post-trial interview of witness David Baker; and purported information from her cell phone. I discuss each of these briefly.

Her theory of innocence—and what she contends her attorneys should have argued—is that another person came into her apartment and started the fire, presumably while she was in the bathroom. According to Cruz, Jaime's interview, which occurred at some point after the fire and which defense counsel did not receive until September 2014, supports this theory because her son referred to "the man" in response to questioning about the fire.

Although the actual recorded interview is not part of the record, there is a report indicating that the interview occurred on July 13, 2013,[7] and that Jaime conveyed the following information: that he was in the bedroom and there was a fire at his house; that his mom was in the living room area when the fire happened; that he did not know how the fire started or who made the fire; and that his mother got "boo-boos" from the fire.  Defense counsel, in his affidavit to the state habeas court, indicated that he watched the twenty-two minute interview once it was obtained, and he described it as follows:

> Jaime makes reference to "the man" throughout, but does not indicate who "the man" is/was or what "the man" did except that he helped with the fire and took the stove away to his house. Jaime seems to be indicating that the man made the fire but refers back to taking the stove to his house, which is "way way up."  My opinion of the interview is that Jaime, due to his age, cannot verbalize exactly what he is trying to say about "the man" or what "the man" did.

(Ex. C to Resp't Mot. to Dismiss in state habeas case & Ex. 6 thereto.)

Jaime's statements thus appear to be very unclear as to what was occurring or what involvement "the man" had.  At one point, a description of it is that Jaime said the man "helped" with the fire, which could easily be a reference to a person helping to put out the fire, rather than a person starting the fire.  Moreover, references to removing the stove and taking the stove up would not have been events that happened *before* the fire.  Christian was found under the stove, and the stove was subsequently examined.  To the extent Jaime's statements were understandable and admissible, moreover, they also placed his mother in the living room when the fire started, which would not have aided her proposed theory that someone else came and started the fire

---

[7]  There is some question about the exact date of the interview, based on the documents referencing it.  It appears undisputed, however, that it was not provided until after the trial had concluded.

while she was in the bathroom.  In short, the interview is not the sort of extraordinary evidence that shows her factual innocence, particularly given the other evidence against her.

The impact, if any, of the post-trial interview of David Baker by Cruz's investigator is similarly unclear.  David Baker had known Poulos (Cruz's landlord) for some time and was one of the people that Cruz theorizes may have started the fire (either with Poulos or at his direction).  Cruz alleges in her petition, consistent with one of her later statements to investigators but not mentioned in her first few statements, that Baker had knocked on her door the morning of the fire, and then spoke with Poulos.  In her petition, she suggests that he or Poulos may have returned to her unlocked apartment while she was in the bathroom and started the fire.

During the interview, Baker told the investigator that he denied all assertions made by Cruz, that he does not discuss the fire with anyone, and that the case was "none of his business."  He also stated that he knew nothing about the gasoline can.  But Cruz seizes on a different portion of the report, in which Baker says that the last time he encountered Poulos, Poulos had asked him, "Why did you set the apartment on fire?"  (Ex. 7 to Cruz's petition in state habeas case, Trial Rec.)  From this, Cruz contends that, "if Mr. Baker [and] Mr. Poulos had no knowledge of the fire [and] had not been present that day, [then] Mr. Poulos would have had no reason to accuse Mr. Baker of setting the fire."  (Resp't Ex. 7 at 75.)

In his sworn testimony at trial, Baker testified that he was at work the day of the fire and stated that he had interacted with Cruz and rented an apartment from Poulos approximately the week before the fire, at which time Cruz and Poulos had argued over a missing gas can.  (Trial Tr. 562–69.)  Poulos testified that he had left his home once the morning of the fire, but not to the area where the apartment was.  (*Id.* at 577–78.)  He also testified that he was home when they notified him about the fire.  (*Id.* at 584–87.)  His wife also testified that Poulos was at home the

morning of the fire, and only came to the property after being notified of the fire.  No other neighbors saw Poulos or his truck in the area that morning.  In short, Cruz presented no testimony at trial, and has presented no sworn  testimony before this court, to place either Baker or Poulos at her home the morning of the fire.

She has not produced any affidavits from Baker or Poulos, and neither these witnesses (nor any others) have recanted, and Baker continues to deny that he had any involvement with the fire or was even there that day.  Accordingly, even if the jury had before it this evidence and Baker had admitted on the stand that Poulos had asked him that question, I cannot say that no reasonable juror would have convicted her, particularly because of the other evidence tying her to the fire, as well as the evidence and eyewitness testimony undermining any assertion that Baker or Poulos was present before the fire began.

The third piece of evidence that Cruz relies on for her actual innocence—her phone—is not "new" evidence.  As the habeas court noted, Cruz was aware of the phone's existence and its contents prior to trial, but did not raise the issue at trial or on appeal.  (Resp't Ex. 9 at 10 n.6.) The phone was burned in the fire, but some of the information she wanted to obtain from it would have been sent from her phone to others' phones, most notably her fiancé and her sister.

In particular, she claims that she used her phone to take and send her fiancé photos on her walk to Bo's Belly Barn that morning, and the photos would have shown that her children went with her to the store.  There was, however, security video footage showing her going to purchase the gas and gas can that morning, and nowhere on that footage do her children appear.  She does have a stroller with her, but it is impossible to see inside the stroller.  So, she may have had her infant daughter with her, but the stroller certainly does not appear large enough to have held five

children and a gas can. Moreover, she was in contact with her fiancé prior to trial and she or her attorneys could have requested and obtained those photos from him.

In any event, even if her children were with her when she went to Bo's, I do not believe that seriously undermines any of her convictions. The jury could have convicted her on the child abuse and neglect charges not on the fact that she left the children alone that morning, but on the fact that she kept gasoline in her house, smoked cigarettes around that gasoline, and kept the children locked in a bedroom in which she had removed the mattresses so they would not "tear them up."

Similarly, she argues that the phone would have shown she tried to reach her sister that morning (which is part of her version of events in that she obtained the gas and then called her sister to take her to the car that was without gas). Again, she was in touch with her sister prior to trial and does not show why she could not have obtained this evidence through her sister's phone or from call records. Moreover, the fact that she called her sister, although it could provide support for her alternate explanation for the purchase of gasoline, would not explain why there was gasoline-soaked clothing and a bottle with gasoline residue on the carpet, nor would it place Cruz somewhere else when the fire started.

Her other support for her innocence relies to some degree on information that was at least argued to the jury. For example, she contends that one of her allegedly inconsistent statements was made while she was on medication or had just been released from the burn unit, but her counsel emphasized this in his closing argument. Thus, the jury had this information before it.

In short, and as explained by the habeas court in rejecting her *Brady* claim based on this same evidence, Cruz has not shown that the exculpatory evidence was material, because she did not show "a reasonable probability that the outcome [of her trial or sentencing] would have been

different had the evidence been disclosed . . . ."  (Resp't Ex. 9 at 9 (quoting *Bowman v.*

*Commonwealth*, 445 S.E.2d 110, 112 (Va. 1994)).)  Put differently, even considering

cumulatively all of this offered evidence of innocence, the evidence of guilt remains strong, such

that I cannot say no reasonable juror could have found Cruz guilty.  I therefore conclude that hers

is not the "rare" case that sets forth an "actual innocence" claim so as to excuse her procedural

default. *See Schlup*, 513 U.S. at 321.

### 2.  Cause and Prejudice

In her petition, Cruz offers little in support of establishing "cause and prejudice" for her

default.  She points to the Commonwealth's alleged *Brady* violations, but her *Brady* claim fails

for the reasons set forth below in discussing that claim.  She also appears to claim that her

counsel's ineffective assistance constitutes cause for her failure to raise these claims on direct

appeal, but critically, she did not contend in her state habeas petition that counsel was ineffective

for failing to raise any particular issue on appeal.  Nor has she asserted—much less established—

cause and prejudice to excuse her failure to make that assertion in state habeas.  Accordingly, her

counsel's alleged ineffectiveness does not allow her to establish cause and prejudice for her

defaulted claims. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that in order to

rely on a *defaulted* claim of ineffective assistance of counsel to show "cause" for defaulting

another claim, the petitioner must establish cause and prejudice for defaulting the ineffective

assistance claim).

### 3.  Exception based on *Martinez v. Ryan*

There is another possible avenue to establishing cause and prejudice, as set forth in

*Martinez v. Ryan*, 566 U.S. 1 (2012).[8]  *Martinez*, however, applies only to an ineffective

---

[8]  Under *Martinez v. Ryan*, 566 U.S. 1 (2012), a federal habeas petitioner may satisfy the "cause"
requirement of an otherwise procedurally defaulted claim of ineffective assistance if: (1) the ineffective assistance

assistance claim; thus, it cannot excuse any portion or subpart of claims 2, 3, 5, or 7. As to the defaulted claims that are part of her ineffective assistance claims (4(e), (f), (h), (i), (k)–(p)), respondent argues that they are not excused under *Martinez* because none of them constitute a "substantial" claim, as required under *Martinez*.

To be substantial, a claim must have "some merit." *Martinez*, 566 U.S. at 14. To establish ineffective assistance, a petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668, 669 (1984). Courts apply a strong presumption that counsel's performance, especially regarding trial management and strategy, was within the range of reasonable professional assistance. *Id.* at 689. To demonstrate prejudice, petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at 694.

I have reviewed these claims, but conclude that none of the unexhausted ineffective-assistance-of-counsel claims are "substantial" as required to overcome the procedural bar. Most of them are tactical decisions by counsel, which are entitled to great deference, and Cruz has not shown that counsel was constitutionally deficient.[9] Regardless, none of the claims satisfy the

---

claim is a substantial one; (2) the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding." *Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014) (quoting *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)).

[9] Two of the claims that are not strategic decisions are claims 4(i) and 4(p). As to claim 4(i), which is a claim that counsel failed to object when it was made known that one of the jurors had not disclosed during voir dire that she was romantically involved with a law enforcement officer, that issue was, in fact, raised with the court during the trial before deliberations began. That juror was made an alternate and never deliberated. So, there is nothing that would have been different about the outcome of Cruz's case had counsel "objected." As to claim 4(p), which alleges that Cruz's counsel told her not to testify because she would be emotional on the stand and it would not be a good idea, she does not allege that her counsel ever precluded her from testifying; only that they counseled against it. This is not improper. Additionally, as to claim 4(k), which is that counsel failed to present all the trial errors on direct appeal, *Martinez* is inapplicable. *Davila v. Davis*, 582 U.S. __, 137 S. Ct. 2058, 2065 (2017)

*Strickland* standard. Thus, *Martinez* does not excuse Cruz's default of claims 4(e), 4(f), 4(i), 4(k), 4(l), 4(m), 4(n), 4(o), and 4(p).

In light of my rulings on procedural default, the only remaining claims to be addressed on their merits are claims 1, 2(b), 4(a)–(d), 4(g), 4(j), and 6, which I turn to next.

## B. Standard of Review for Claims on Merits

To obtain federal habeas relief, a petitioner must demonstrate that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When reviewing a habeas corpus petition challenging a state conviction, federal courts employ a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Deyton v. Keller*, 682 F.3d 340, 344–45 (4th Cir. 2012) (citation omitted). Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal habeas court may only grant habeas relief "with respect to any claim that was adjudicated on the merits" in state court if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Deyton*, 682 F.3d at 345 (quoting same).

A state court decision is "contrary to" the Supreme Court's clearly established precedent if (1) the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

---

(explaining that *Martinez* has not been extended "to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of *appellate* counsel") (emphasis added).

Similarly, a state court decision constitutes an "unreasonable application" of clearly established federal law if the state court identifies the correct legal rule but unreasonably applies it to the facts of the particular case. *Id.* at 407. The "application must be 'objectively unreasonable'" before a court may grant habeas relief. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Put differently, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Indeed, a federal court may not find "an unreasonable application of federal law unless the state court's decision lies well outside the boundaries of permissible differences of opinion." *Tice v. Johnson*, 647 F.3d 87, 108 (4th Cir. 2011) (internal quotation marks omitted). If the foregoing standard "is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

As to Cruz's ineffective assistance of counsel claims, I evaluate them under the familiar two-prong test delineated in *Strickland*, 466 U.S. 668. To state a successful claim for ineffective assistance of counsel under *Strickland*, the petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness, such that counsel was not acting as the counsel guaranteed by the Sixth Amendment; and (2) but for counsel's objectively unreasonable performance, there is a reasonable probability the outcome of the trial would have been different. 466 U.S. at 687–91. There is no need "to address both components"; rather, if a reviewing court determines that the petitioner's claim fails on either the performance or the prejudice prong, the court's inquiry may stop there. *Id.* at 697.

In fairly evaluating an attorney's performance, "judicial scrutiny . . . must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight

. . . ." *Id.* at 689; *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008).  Thus, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  The court may adjudge counsel's performance deficient only when a petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.[10]

To show prejudice, a petitioner must show that there is a "reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  The petitioner need not prove by a preponderance of the evidence that the jury's verdict would have been different, but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111–12.  As the Supreme Court has recently reaffirmed, the *Strickland* standard is "doubly deferential" in the context of a habeas petition, because the deferential review under AEDPA overlaps with the deferential standard under *Strickland*. *Woods v. Etherton*, 578 U.S. __,136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).  Put differently, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Woods*, 136 S. Ct. at 1151 (quoting *Burt v. Titlow*, 571 U.S. __, 134 S. Ct. 10, 13 (2013)).

In reviewing the remaining claims on their merits, it is plain that the state court applied the correct legal standard—*Strickland*—to determine whether trial counsel provided effective assistance.  Thus, in order to be granted relief as to the ineffective assistance claims addressed by the state court, Cruz must demonstrate that the state court's application of *Strickland* was unreasonable, or that its decision was based on an unreasonable determination of the facts.  28

---

[10] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough*, 540 U.S. at 8.

U.S.C. § 2254(d). In this case, because the Supreme Court of Virginia summarily refused Cruz's petition for appeal, the reasoning reviewed under § 2254(d), for most of the claims, is the trial court's decision denying Cruz's habeas petition. *See Wilson v. Sellers*, 584 U.S. __, 138 S. Ct. 1188, 1193 (2018). Similarly, as to claim 6, which was addressed on direct appeal, the reasoning of Virginia's Court of Appeals is reviewed. *See id.*

*C. Analysis of Claims*

**1. Claims 1 and 2(b) – Newly Discovered Evidence and *Brady* Violations**

In claim 1, Cruz contends that newly discovered evidence shows her actual innocence. There are three pieces of information she points to: (1) the interview with Cruz's three-year-old son, Jaime; (2) Cruz's cell phone or photos sent from that cell phone; and (3) an interview by Cruz's investigator with David Baker after the trial. As to the first two of these items, moreover, she contends that the Commonwealth improperly withheld this information.

Both the Supreme Court and the Fourth Circuit have stated that a freestanding actual innocence claim is not cognizable on federal habeas review. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006). If such a claim were cognizable on federal habeas review, though "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Buckner*, 453 F.3d at 199. For the same reasons already discussed above, I conclude that even if such a claim were cognizable, Cruz has failed to state one.

In claim 2(b), Cruz alleges that the Commonwealth committed prosecutorial misconduct by withholding requested evidence from the defense in violation of *Brady*, and she again references her phone and Jaime's interview. The state habeas court addressed these claims, and concluded that they were without merit. It reasoned:

Assuming without deciding that the Commonwealth failed to disclose each of these items before trial, and further assuming without deciding that they constitute evidence that is favorable to Cruz, the Court finds that Cruz has not demonstrated that she was prejudiced by the Commonwealth's alleged failure to disclose the identified items because she has not demonstrated that the items were material. *See Hicks v. Dir., Dep't of Corr.*, 289 Va. 288, 300–01, 768 S.E.2d 415, 420–21 (2015) (assuming without deciding that alleged *Brady* material existed and that the Commonwealth failed to disclose it, but concluding that no *Brady* violation occurred because the allegedly withheld evidence was not material).

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). And a "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.* In this case—even considering the combined weight of all of the allegedly suppressed items—the Court finds that Cruz has not established that there exists "a reasonable probability that the outcome of [Cruz's trial or sentencing] would have been different had the evidence been disclosed to the defense." *Bowman v. Commonwealth*, 248 Va. 130, 133, 445 S.E.2d 110, 112 (1994).

The Court finds that Cruz has failed to identify anything more than what appear to be—at most—a few minor inconsistencies between the evidence offered at trial and some of the evidence that Cruz claims the Commonwealth failed to disclose. The Court finds that the Commonwealth's evidence against Cruz—while circumstantial—was still strong. And the possible existence of a few minor inconsistencies does not warrant the conclusion that there exists "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. The Court further finds that Cruz has not identified any allegedly withheld evidence that would have impeached any of the Commonwealth's witnesses in any meaningful way, nor has Cruz identified any allegedly withheld evidence that would have materially supported a credible defense to any of the charged crimes. Instead, Cruz mostly speculates about the contents of the allegedly withheld items and about the likelihood that the disclosure of these items would have had an impact on the outcome of the proceedings.[] "[S]peculation with slight support" is insufficient to justify relief in habeas corpus, even in the context of an alleged *Brady* violation. *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995). Accordingly, the Court holds that [this claim] is dismissed because it is without merit.

(Resp't Ex. 9 at 9–10.)  Immediately following that reasoning, the court noted in a footnote that

the portion of the claim involving the "alleged non-disclosure of Cruz's cell phone is dismissed

for the additional reason that Cruz was aware of the phone's existence and the phone's contents

prior to trial, but Cruz failed to raise the issue at trial and on appeal."  (*Id.* at 10 n.6 (citing

*Parrigan*, 205 S.E.2d at 682).)

The habeas court's reasoning is not an incorrect statement of federal law, or an

unreasonable application of it.  As the habeas court correctly noted, to obtain relief for an alleged

*Brady* violation, a petitioner must show "a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473

U.S. at 682.  For the reasons explained by the habeas court, Cruz has failed to make that

showing.  Accordingly, this claim fails.

### 2. Claims 4(a) and 4(j) – Counsel's Failure to Interview Commonwealth Witnesses and To Investigate and Confront Witnesses With Contradictory Evidence

In claim 4(a), Cruz contends that counsel was ineffective for failing to interview

witnesses.  Likewise, in claim 4(j), she alleges that counsel failed to adequately investigate and

elicit evidence to contradict certain testimony by Commonwealth witnesses.  The state trial court

rejected these claims, reasoning as follows:

> In claim (l)(c), Cruz alleges that counsel were ineffective for failing to investigate and elicit evidence to contradict the Commonwealth's witnesses. Specifically, Cruz claims counsel failed to interview any of the Commonwealth's witnesses. Similarly, in claim (l)(e), Cruz alleges that counsel were ineffective for failing to contact, review, and call to testify every potential witness for the defense. The Court finds that these claims are without merit.
>
> The Court credits counsel's sworn statement that they were hampered in their efforts to interview all of the potential witnesses Cruz asked them to interview because Cruz refused to waive her right to a speedy trial, thereby denying counsel the additional time

they requested to investigate Cruz's case. The Court finds that counsel diligently investigated Cruz's defense, investigating and interviewing as many potential witnesses as reasonably possible under the circumstances of this case. The Court further finds that counsel's inability to interview additional witnesses before trial is entirely attributable to Cruz's refusal to waive her right to a speedy trial, and therefore Cruz cannot prevail on a claim of ineffective assistance of counsel on that basis. *See United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989) ("Where a defendant, fully informed of the reasonable options before [her], agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel."); *United States v. Williams*, 631 F.2d 198, 204 (3d Cir. 1980) (rejecting ineffective assistance of counsel claim where the defendant had concurred in trial counsel's tactical decision).

Moreover, counsel's decisions regarding which witnesses to seek out before trial and which witnesses to call to testify at trial are matters of trial tactics not subject to second-guessing on collateral review. *See Strickland*, 466 U.S. at 689, 699 (holding that counsel's decision not to seek out character witnesses to testify at the sentencing hearing was the result of a reasonable strategic choice); *Williams v. Dixon*, 961 F.2d 448, 451 (4th Cir. 1992) (refusing to engage in "excessive second-guessing" of counsel's decision not to seek out certain witnesses to testify at trial); *cf. Gonzalez v. United States*, 553 U.S. 242, 249 (2008) ("Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for trial.").

(Resp't Ex. 9 at 18–19.)

I agree with this analysis. In counsel's representations to the habeas court, he states that counsel "literally begged" Cruz to waive her speedy trial rights in order to allow them more time to investigate the large number of witnesses, but she refused. Nonetheless, counsel was able to interview and investigate many witnesses before trial. On the current record, any failure to investigate does not remove counsel's performance from the wide range of reasonable competence. *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Decisions about what types

of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of . . . evidence they can choose not to introduce.'" (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993)).

Moreover, Cruz has not shown prejudice. Although she asserts that additional investigation would have led to the impeaching information she cites in her petition, none of that information supports a reasonable probability that she would have been found not guilty. Because Cruz has not shown that the habeas court's reasoning or determination of the facts was improper, these claims are denied.

### 3. Claims 4(b) and 4(d) – Failure to Present A Defense and to Call Dale Wheeler As a Witness

In claim 4(b), Cruz claims that her attorneys failed to "present a defense at all." The habeas court flatly rejected that reasoning and credited counsel's explanations detailing the trial preparation efforts (Resp't Ex. 9 at 15), which included meeting with Cruz to discuss her case on at least seven separate occasions, hiring an investigator to interview witnesses and review other evidence, and retaining an expert to conduct a forensic evaluation into the cause of the fire. As already noted, the habeas court also noted that those efforts were hampered to a large degree because of Cruz's refusal to agree to waive her speedy trial rights and agree to a continuance. (*Id.*)

Similarly, in claim 4(d), she alleges that counsel was ineffective for failing to call Dale Wheeler, an expert witness, to testify for the defense about the cause of the fire. The state trial court addressed this claim in her state habeas proceedings, interpreting it as a claim that "counsel should have premised their defense on the presence of a gasoline can outside—not inside— Cruz's apartment, and on Cruz's claim that another apartment owned by Cruz's landlord and

located three doors down from Cruz's apartment burned down nine days after Cruz's apartment burned down." (Resp.'s Ex. 9 at 12.)

In her state petition, Cruz argued that counsel should not have argued to the jury that the fire could have had an accidental cause. (*Id.* at 13.) But the state court concluded that "counsel reasonably could have concluded that such an argument had a greater likelihood of success than an argument that someone else might have snuck into Cruz's apartment and started the fire intentionally." (*Id.* at 14.) In doing so, the court specifically noted that witnesses had testified that they had not seen anyone go in or out of Cruz's apartment during the time immediately before the fire. (*Id.*) Given that evidence, the court found that "counsel reasonably chose not to argue that Poulos or some other individual snuck into the house and started the fire" and "[i]nstead . . . . reasonably chose to argue that the fire could have started by accident. (*Id.*)

The habeas court's conclusion was not contrary to or an unreasonable interpretation of federal law; it was a fairly typical application of *Strickland*. *See Bunch v. Thompson*, 949 F.2d 1354, 1363–64 (4th Cir. 1991) (habeas court should not second guess an attorney's decision on how best to present a defense). Especially in keeping with the *Strickland*'s directive not to view counsel's conduct through the distorted lens of hindsight, 466 U.S. at 689, the habeas court's conclusion that counsel pursued a reasonable trial strategy was consistent with federal law.

Similarly, Cruz has not shown that counsel was ineffective for failing to call Wheeler as a witness. Instead, "[f]ederal courts reviewing *Strickland* claims "give counsel wide latitude in determining which witnesses to call as part of their trial strategy." *United States v. Dyess*, 730 F3d 354, 364 (4th Cir. 2013). That deference is warranted here, moreover, in light of Wheeler's anticipated testimony. Wheeler, for the most part, agreed with the analysis by the Commonwealth's expert. For example, he agreed that the scene had been processed by the Fire

Marshal correctly and that the determining factor was arson. (Resp't Ex. 8 at 35.) His report noted that there was insufficient physical evidence from the fire scene to conclude that Cruz had started it, (*id.*), but it contained no exculpatory evidence and would have contradicted counsel's theory that the fire may have started accidentally.

Claims 4(b) and 4(d) will be denied.

### 4. Claim 4(c) – Counsel's Failure to Impeach Witnesses

In claim 4(c), which is closely related to the second portion of claim 4(j), Cruz alleges that counsel was ineffective for failing to impeach a number of the Commonwealth's witnesses, listing fifteen of them by name. Assuming the entirety of the claim is properly before this court,[11] I conclude that the habeas court's resolution of this claim was proper. It reasoned:

> [W]hether and how to examine a witness is quintessentially a matter of trial tactics not subject to second-guessing on collateral review. *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978); see also *United States v. Clayborne*, 509 F.2d 473, 479 (D.C. Cir. 1974) ("Knowing when not to cross-examine an adverse witness is the art of cross-examination at its highest."); *Higgs v. United States*, 711 F. Supp. 2d 479, 515 (D. Md. 2010) ("Defense counsel constantly must decide what questions to ask and how much time to spend on a particular witness. These are precisely the types of tactical decisions a court is not supposed to second guess."). Accordingly, to the extent that [Cruz's claims] could be read to include an allegation that counsel failed to effectively question the witnesses who testified at trial, the Court holds that this portion of these claims is dismissed because it is without merit.

(*Id.* at 19–20 n.8.) I agree. Given the theory that counsel had elected to pursue—and reasonably so, as already discussed—much of the cross-examination that Cruz contends they should have undertaken would not have been sound trial strategy.

---

[11] Respondent contends that this claim is more detailed than the more general claim set forth in her habeas petition and therefore argues that portions of it are procedurally barred from consideration.

Lastly, Cruz has failed to demonstrate prejudice because she has not shown that impeaching these witnesses as she requests would have resulted in the substantial likelihood of a different verdict. Some of the discrepancies were minor and fairly meaningless (for example, challenging the witness who said she was enjoying the "sunshine" on her covered porch because it was raining the day of the fire). Also, particularly given the number of witnesses that testified, an attempt to show and argue that this many witnesses were purposefully lying to the jury might well have backfired. Indeed, as the trial court noted when Cruz alleged in a post-trial *pro se* filing that there had been perjury by sixteen witnesses, "[i]t would be very unusual for sixteen people to have committed perjury in a trial . . . In fact, it would probably set a record, I would say, for the record number of perjury arising out of a single trial. If there were sixteen it would be unprecedented not only in my experience but in the history of the Commonwealth." (Trial Rec. at 1205–1206.) Significantly, moreover, for many of the witnesses, Cruz has not offered any reason or motive for them to be untruthful.

For all of the foregoing reasons, I will not disturb the habeas court's determination that Cruz failed to show ineffective assistance of counsel with regard to the questioning of witnesses.

### 5. Claim 4(g) – Counsel's Failure to Move to Suppress Cruz's Statements to Police

In claim 4(g), Cruz argues that counsel was ineffective for failing to suppress two of her interviews with investigators.[12] This claim is without merit. As the habeas court noted, Cruz has not suggested a legally sufficient basis for such a motion. She contends that the statements should have been suppressed because she had just been taken off life support and released from the hospital, was on strong pain medication, and had just lost her child. But as the habeas court explained, "these circumstances, without more, would not have required the Court to suppress

---

[12] The record reflects that her attorneys moved to suppress later statements by Cruz on the ground of coercion and that the court suppressed some of those statements.

the statements Cruz made during her first two interviews with police." (Dkt. No. 9 at 17.) The court relied on two federal cases for support, and I find that neither its interpretation of that law nor its application of it to the facts, was unreasonable.

In one of the cases relied upon by the habeas court, *United States v. Cristobal*, 293 F.3d 134 (4th Cir. 2002), the Fourth Circuit held that "[t]he fact that [the defendant] had been given pain killers and narcotics such as morphine," before being questioned by police in his hospital room, was insufficient to render his waiver involuntary. *Id.* at 141. "Rather, there would also have to be evidence that the police took advantage of [the] incapacitation," *i.e.*, there must be a "substantial element of coercive police conduct." *United States v. Holmes*, 670 F.3d 586, 592 (4th Cir. 2012). As in any case in evaluating the voluntariness of a statement, the court is required to evaluate the "totality of the circumstances." *Cristobal*, 293 F.3d at 140. Based on these authorities and the facts of this case, there is nothing to support the conclusion that a motion to suppress her first two statements would have been successful. Because Cruz cannot show prejudice, this claim fails. The state court's application of the law to these facts was not unreasonable or contrary to federal law.

### 6. Claim 6 – Double Jeopardy Claim[13]

In claim 6, Cruz argues that it was a violation of the Double Jeopardy Clause to allow the jury to decide both the murder in the commission of arson charge and the second-degree murder/felony homicide. She also seems to be arguing that it was a violation to prosecute and punish her for both the felony murder and the felony child neglect charges related to Christian.

The Court of Appeals addressed the double jeopardy argument at length and rejected it. (Resp't Ex. 4 at 7–9.) Having reviewed that analysis, I conclude that the state court's analysis

---

[13] To the extent claim 6 also references the issue of the indictments being changed from Carlitos Cruz to Christian Cruz, it is duplicative of claim 3(a), and is procedurally defaulted, as already discussed.

was not contrary to federal law and that Cruz has not shown an entitlement to habeas relief on this claim.

## V.   CONCLUSION

For the reasons stated, I will grant Respondent's motion to dismiss.  The claims addressed above on their merits (claims 1, 2(b), 4(a)–(d), 4(g), 4(j), and 6) do not entitle Cruz to relief, and the remainder  of her claims are procedurally barred from review on federal habeas and she has failed to present any valid excuse to overcome that bar.  Further, concluding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability will be denied.

An appropriate order will be entered.

**ENTER:** This __27th__  day of September, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE